UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACOB N. FERGUSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-2512 (RC) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| ROBBIN M. OWEN, | : | | |
| | : | | |
| Defendant. | : | | |

MEMORANDUM OPINION

DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND COMPLAINT

I. INTRODUCTION

Plaintiff Jacob Ferguson ("Mr. Ferguson" or "Plaintiff"), proceeding *pro se*, requests that the Court reconsider its dismissal of his claim under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, arguing that the Court erred in failing to consider how the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") amended RFRA over 20 years ago. In the alternative, Plaintiff seeks leave to amend his Complaint. For the reasons explained below, the Court denies Plaintiff's Motion for Reconsideration or, in the Alternative, for Leave to Amend Complaint.

II. BACKGROUND

The Court presumes familiarity with its prior opinion in this matter, which recounted the factual background of this case and dismissed Plaintiff's claims under RFRA and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Ferguson v. Owen*, No. 21-cv-02512 (RC), 2022 WL 2643539, at *1–3 (D.D.C. July 8, 2022). Noting at the time that "[t]he Court perceives . . . that Mr. Ferguson may have a claim for injunctive relief if

his allegations are correct that the NPS has not issued, and continues not to issue, permits to him in conformity with the relevant regulations," the Court permitted Plaintiff to file for leave to amend his Complaint. *Id.* at *11.

Plaintiff has filed a motion seeking reconsideration of the Court's dismissal of his claim under RFRA or, in the alternative, leave to amend his Complaint. Pl.'s Mot. for Recons. or, in the Alternative, for Leave to Amend Compl. ("Pl.'s Mot."), ECF No. 15. He has submitted a Proposed Amended Complaint that purportedly "clarif[ies] the nature of [Plaintiff's] religious belief." Pl.'s Mem. in Supp. Pl.'s Mot. ("Pl.'s Mem.") at 13, ECF No. 15-1. Defendant Robbin M. Owen ("Defendant"), Chief of the Division of Permits Management of the National Park Service, opposes the motion. Def.'s Mem. Opp'n to Pl.'s Mot., ECF No. 16. Plaintiff filed a reply in support of his motion. Pl.'s Reply Supp. Pl.'s Mot., ECF No. 17. The motion is now ripe for consideration.

### III.  LEGAL FRAMEWORK

#### A.  Motion for Reconsideration

A court may reconsider any interlocutory order under Federal Rule of Civil Procedure 54(b) "as justice requires," *Capitol Sprinkler Inspection, Inc. v. Guest Servs.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (internal quotations omitted), but "[i]n this District, that abstract phrase is interpreted narrowly," *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, No. 20-mc-00008, 2021 WL 1909777, at *5 (D.D.C. May 12, 2021) (internal quotations omitted). Reconsideration may be appropriate "when a court has 'patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or where a controlling or significant change in the law has occurred.'" *Ali v. Carnegie Inst. of Wash.*, 309 F.R.D. 77, 80 (D.D.C. 2015) (quoting *U.S. ex rel.*

*Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012)). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Westrick*, 893 F. Supp. 2d at 268. "A court's discretion under Rule 54(b) . . . is 'limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Mahoney v. United States Capitol Police Bd. ("Mahoney II")*, 566 F. Supp. 3d 22, 26 (D.D.C. 2022) (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).

### B.  Motion to Amend Complaint

Pursuant to the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after serving it, or within a specified amount of time if the pleading is one to which a responsive pleading is required. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

The decision to grant or deny leave to amend "is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam). Leave to amend a complaint should be freely granted by the court "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should also be mindful that a *pro se* litigant's complaint should be "construed liberally and is held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Lemon v. Kramer*, 270 F. Supp. 3d 125, 133 (D.D.C. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Nevertheless, a court "may deny a motion to amend if such amendment would be futile," *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)), such as if the amendment

3

"merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss," *id.* (quoting *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002)); *see also, e.g.*, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

## IV.  ANALYSIS

Plaintiff has failed to meet the standard for reconsideration.  The Court did not make an error and fail to consider how RLUIPA amended the definition of the "exercise of religion" in RFRA or to follow controlling D.C. Circuit precedent.  Nor did the Court patently misunderstand Plaintiff's filings when it considered, as part of its substantial burden analysis, the alternative means available to Plaintiff for prophesying and playing music consistent with his religious beliefs.  Moreover, because Plaintiff's proposed Amended Complaint remains substantially similar to his Complaint and its reiterated claim under RFRA would not withstand a motion to dismiss, the Court denies Plaintiff's motion seeking leave to amend his Complaint.

### A.  Motion for Reconsideration

Plaintiff contends that the Court ought to reconsider its dismissal of his RFRA claim for two reasons.  First, according to Plaintiff, the Court's opinion failed to consider how RLUIPA amended RFRA's definition of the "exercise of religion" over 20 years ago.  Specifically, Plaintiff argues, "RLUIPA changed RFRA's definition of religious exercise to mean: 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'"  Pl.'s Mem. at 3 (citation omitted).  Thus, the Court's consideration as part of its substantial burden analysis of whether playing music and prophesying at the Lincoln Memorial was central

to Plaintiff's religious beliefs not only reflected outdated D.C. Circuit precedent, *see id.* at 8–9, but was also "antithetical to the direct and clear language of RFRA unambiguous on its face" and "expressly forbidden by Congress," *id.* at 7.  Second, Plaintiff states, the Court has patently misunderstood Plaintiff's filings because Defendant in fact did not grant alternative means for his musical demonstrations and further denied or failed to act on the majority of his permit applications.  *Id.* at 10–11.  The Court considers each of these arguments in turn.

First, Plaintiff's motion is incorrect in asserting that the Court failed to consider the D.C. Circuit's controlling precedent on RFRA.  In Plaintiff's re-telling of the relevant precedent's history, the panel that decided *Henderson v. Kennedy ("Henderson I")*, 253 F.3d 12 (D.C. Cir. 2001), was "unaware of RFRA's newly amended 'exercise of religion' definition" as set forth under RLUIPA.  Pl.'s Mem. at 4.  The "precedential language that circulates RFRA case law in the D.C. Circuit today" is thus that from *Henderson I*, even though the D.C. Circuit later "attempted to walk back its language" in *Henderson v. Kennedy ("Henderson II")*, 265 F.3d 1072 (D.C. Cir. 2001).  Pl.'s Mem. at 4.  The D.C. Circuit then, "in an attempt to mitigate the looming fallout of such a dangerous anti-RFRA precedent" in *Henderson I*, "made itself crystal clear" in *Levitan v. Ashcroft*, 281 F.3d 1313 (D.C. Cir. 2002), "that a person has *never* had to prove that their religious exercise is 'required' by or 'central' to religious belief."  Pl.'s Mem. at 5.

Plaintiff acknowledges, however, that, the question of whether a religious exercise is required by or central to one's religious beliefs "*can* . . .be [a] relevant factor[] in the substantial burden analysis" according to the D.C. Circuit.  *Id.* (citation omitted).  And the D.C. Circuit has indeed stated consistently that, "[a]lthough the amendments [under RLUIPA] extended the protections of RFRA to 'any exercise of religion, whether or not compelled by, or central to, a

5

system of religious belief,' the amendments did not alter the propriety of inquiring into the importance of a religious practice when assessing whether a substantial burden exists." *Henderson II*, 265 F.3d at 1074 (internal citation omitted); *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011) (rejecting plaintiff's argument that RLUIPA overruled *Henderson I* by amending RFRA's definition of "exercise of religion"); *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) ("Because the burdened practice need not be compelled by the adherent's religion to merit statutory protection, we focus not on the centrality of the particular activity to the adherent's religion but rather on whether the adherent's sincere religious exercise is substantially burdened. . . . . An inconsequential or *de minimis* burden on religious practice does not rise to this level [of substantial burden], nor does a burden on activity unimportant to the adherent's religious scheme."). Moreover, the availability of a "multitude of means" for engaging in a religious exercise weighs against finding a substantial burden under RFRA. *Doe*, 642 F.3d at 1121 (quoting *Henderson I*, 253 F.3d at 17); *see also Archdiocese of Wash. v. Wash. Metro. Area Transit Auth. ("Archdiocese of Washington II")*, 897 F.3d 314, 333 (D.C. Cir. 2018) ("Sincere religious beliefs are not impermissibly burdened by restrictions on evangelizing in a non-public forum where a 'multitude of means' remains for the same evangelization." (citation omitted)); *Frederick Douglass Found., Inc. v. D.C.*, 531 F. Supp. 3d 316, 342 (D.D.C. 2021).

As an initial matter, contrary to Plaintiff's assertion that the Court must have been unaware of the change to RFRA's definition of religious exercise, the Court explicitly cited to RFRA's definition of the "exercise of religion" as amended by RLUIPA. *See Ferguson*, 2022 WL 2643539, at *6 (citing *Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 293–94 (D.D.C. 2020)). But more importantly, the Court's opinion is consistent with D.C. Circuit

6

precedent.[1]  The D.C. Circuit did not overrule *Henderson I*; it denied the petition for rehearing in *Henderson II* and clarified that RLUIPA's amendments did not affect a court's ability to assess the importance of a religious practice in conducting a substantial burden analysis.  *See Henderson II*, 265 F.3d at 1074.  Consistent with that guidance, the Court here considered the importance of demonstrating at the Lincoln Memorial to Plaintiff's religious beliefs.  The Court's analysis did not make the centrality of prophesying and playing music at the Lincoln Memorial to Plaintiff's religious beliefs a threshold question, as Plaintiff's motion suggests.  It instead concluded that, because playing music and prophesying at the Lincoln Memorial was not central to Plaintiff's religious beliefs, such demonstration was not so important to Plaintiff's beliefs that the denial of Plaintiff's permit applications constituted a substantial burden under RFRA.  *See Kaemmerling*, 553 F.3d at 678.  That is, Defendant's actions neither "force[d] Plaintiff] to engage in conduct that [his] religion forbids or . . . prevent[ed] [him] from engaging in conduct [his] religion requires."  *Doe*, 642 F.3d at 1121 (quoting *Henderson I*, 253 F.3d at 16).  The Court thus did not fail to consider controlling D.C. Circuit precedent or a change in the law.

Second, Plaintiff posits that the Court must have patently misunderstood Plaintiff's filings by concluding that the availability of alternative means to Plaintiff for demonstrating musically weighed against finding a substantial burden.  In particular, Plaintiff argues, Defendant

---

[1] Plaintiff appears to suggest that D.C. Circuit precedent may itself be erroneous by permitting consideration of the importance of a religious practice as part of a substantial burden analysis.  *See* Pl.'s Mem. at 7 ("[T]he mere suggestion of a court that notions of *centrality* and/or *requirement* may at all weigh into the substantial burden analysis, is expressly forbidden by Congress.").  Justice Alito has, in dissent, noted that "it may be that RLUIPA and RFRA do not allow a court to undertake for itself the determination of which religious practices are sufficiently mandatory or central to warrant protection, as both protect 'any exercise of religion, *whether or not compelled by, or central to*, a system of religious belief.'"  *Murphy v. Collier*, 139 S. Ct. 1475, 1484 (2019) (Alito, J., dissenting) (citation omitted).  But until the Supreme Court states that courts may not undertake such an analysis, this Court remains bound by the D.C. Circuit precedent that permits such consideration.

7

in fact left him with no alternative means for his musical demonstrations and further denied or failed to act on the majority of his permit applications.  *See* Pl.'s Mem. at 10–11.  But Plaintiff's argument, which relies on the premise that "no alternative means were offered to Plaintiff *anywhere* in Washington," suggests that he misunderstands the Court's alternative means analysis.  *Id.* at 11.  The question informing the Court's substantial burden analysis was not whether Defendant offered Plaintiff alternative locations for demonstrating on each of his requested dates, but rather whether Plaintiff still had a "multitude of means" available to him for prophesying consistent with his religion.  *Doe*, 642 F.3d at 1121 (quoting *Henderson I*, 253 F.3d at 17).  Defendant need not have offered alternative locations or dates for Plaintiff to have had such a multitude of means available to him.[2]

Consider, for instance, *Archdiocese of Washington II*, wherein the Archdiocese of Washington challenged as a violation of the First Amendment and RFRA the Washington Metropolitan Area Transit Authority's ("WMATA") guidelines prohibiting advertisements that promoted or opposed any religion, religious practice, or belief.  *See* 897 F.3d at 318–19.  The D.C. Circuit concluded that the Archdiocese was not likely to succeed on its RFRA claims, even though the Archdiocese "allege[d] that advertising on public buses provide a 'unique and powerful format' for its evangelization campaign because it 'offers high visibility with consistent daily views.'"  *Id.* at 333 (citation omitted).  The D.C. Circuit noted that "[s]incere religious beliefs are not impermissibly burdened by restrictions on evangelizing in a non-public forum where a 'multitude of means' remains for the same evangelization," and the Archdiocese "ha[d]

---

[2] Given its irrelevance to the question at issue, the Court does not consider whether Defendant's assignment of an alternate location for some of Plaintiff's requested dates, or her alleged failure to do so for others, complied with regulatory requirements.

acknowledged that it has many other ways to pursue its evangelization efforts: in newspapers, through social media, and even on D.C. bus shelters." *Id.* (citation omitted).

Here, the Court recognized in its prior opinion that "prophesying in the heart of Washington and publicly performing music" are important to Plaintiff's religious beliefs. *Ferguson*, 2022 WL 2643539, at *6, 8. As the Court's opinion highlighted, however, Plaintiff's filings indicated that he had not only previously demonstrated in other locations in Washington, D.C., but that his "complaints" regarding the alternative site offered by Defendant were "practical, not religious." *Id.* at *6. Defendant's authorization of Plaintiff playing at the Korean War Veterans Memorial provided him with alternative means;[3] but even if Defendant had not provided such authorization, Plaintiff had adduced that playing at other locations also sufficed as alternative means of practicing his religion. In short, the Court's analysis here again circles back to the same issue: did Plaintiff claim that prophesying and playing music at the Lincoln Memorial was so important to his religious beliefs that disallowing him from doing so left him with no alternative means of prophesying and playing music consistent with his religious beliefs, which would weigh toward finding that Defendant's actions constituted a substantial burden on Plaintiff's beliefs? The Court concluded that Defendant's actions did not prevent Plaintiff from "engaging in conduct [his] religion requires," which Plaintiff could do elsewhere in Washington,

---

[3] Plaintiff protests that Defendant's assignment of this alternate location did not provide him with an alternative means for practicing his religion because consigning him to the Korean War Veterans Memorial "unreasonably restricted [his] ability to musically demonstrate; it was realistically impossible to do." Pl.'s Mem. at 10–11. But Plaintiff's gripes with playing at the "metaphorical lepers colony" that is the Korean War Veterans Memorial are not motivated by his religious beliefs; he objects to the location because it is "awkwardly detached from the people and logistically impractical for a large setup of music equipment." Compl. ¶ 27, ECF No. 1. Plaintiff has shown only that playing at the Korean War Veterans Memorial would be unsatisfactory to him because he may not be able to play in front of the number of people or use the musical equipment that he would prefer. He has not shown that it does not provide an alternative means of practicing his religion.

D.C., and therefore did not constitute a substantial burden under RFRA. *Doe*, 642 F.3d at 1121 (citation omitted). The Court did not patently misunderstand Plaintiff's filings in so concluding.

### B. Motion to Amend Complaint

Although the Court considered Plaintiff's Complaint in light of all of his filings before dismissing his claims, *see Ferguson*, 2022 WL 2643539, at *3 (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015)), the Court also permitted Plaintiff to file for leave to amend his Complaint because it "perceive[d] . . . that [Plaintiff] may have a claim for injunctive relief if his allegations are correct that the NPS has not issued, and continues not to issue, permits to him in conformity with the relevant regulations," *id.* at *11. But Plaintiff has opted not to amend his Complaint to raise a potential claim under the Administrative Procedure Act and states that he "perceives that the Court perceives his RFRA claim is workable, and seeks leave to amend it only[.]" Pl.'s Mem. at 13.

Plaintiff's Proposed Amended Complaint does not differ substantially from his Complaint and prior filings in its explanation of Plaintiff's religious beliefs. In short, Plaintiff originally sought to prophesy and play music at five locations in Washington, D.C. that together formed the shape of a cross. Pl.'s Proposed Am. Compl. ¶ 105, ECF No. 15-2. According to Plaintiff, he heard a command from God that he interpreted to mean that he should prophesy in Washington, D.C. at "the Capitol, the White House, the Lincoln Memorial, and/or any other location that Plaintiff chose to freely exercise his religion at." *Id.* at ¶¶ 110–11. It was, moreover, "always Plaintiff's original intent to conduct successful demonstrations at all five major locations." *Id.* at ¶ 108. In time, even though "Plaintiff did not hear a direct command from God to specifically choose the Lincoln Memorial," *id.* at ¶ 110, Plaintiff came to focus his efforts on the Lincoln Memorial "out of a sincerely held religious belief that God has granted

him authority to make a sovereign choice without God's direct command, and therefore, to believe that God's grace covered him," *id.* at ¶ 115.  Plaintiff's Proposed Amended Complaint indicates that he has chosen the Lincoln Memorial in particular for several reasons: it is not only "the #1 most heavily trafficked and international tourist destination in the nation's capital" and "attracts the largest crowds of people in Washington, D.C.," thus making it a "public square" like that to which the biblical prophets of God are sent, *id.* at ¶¶ 101–02 (citation omitted), but it was also "the *last* place, theoretically, that Plaintiff would want to publicly speak at due to fear" and therefore "the most acceptable place to God," *id.* at ¶ 104.  In addition, Plaintiff offers that Defendant's refusal to permit his demonstrations at the Lincoln Memorial have spurred him further "because he increasingly began to believe that God might be raising him up to fight for his free religious exercise."  *Id.* at ¶ 106.

Though Plaintiff's Proposed Amended Complaint further elucidates his reasons for seeking to perform at the Lincoln Memorial, it nevertheless suffers from the same deficits as did his Complaint.  As the Court understands Plaintiff's proffered reasons, Plaintiff has himself *chosen* the Lincoln Memorial as the site of his demonstrations out of five possible locations where Plaintiff could prophesy consistent with his religious beliefs.  Plaintiff has not attributed any religious significance to demonstrating at the Lincoln Memorial in particular, other than stating that it is an ideal public square that he feels would be most acceptable to God.  *See id.* at ¶¶ 101–04; Pl.'s Reply Supp. Pl.'s Mot. at 3, ECF No. 17 ("Plaintiff has already pleaded that the Lincoln Memorial was important to his religion via its symbolism as the public square where Plaintiff could best conquer his greatest spiritual fear of public speaking and Plaintiff's prophecy could reach the greatest number of people—whom it was intended to help.").  As articulated, Plaintiff's claim is comparable to that in *Mahoney v. United States Capitol Police Bd.*

11

(*"Mahoney I"*), 566 F. Supp. 3d 1 (D.D.C.), *on recons. in part*, 566 F. Supp. 3d 22 (D.D.C. 2022), wherein the plaintiff claimed that the defendants' denial of his permit application to hold a prayer vigil on the West Front Lawn of the United States Capitol violated RFRA. *Id.* at 4–5. Another court in this District, despite recognizing that the plaintiff "'felt called by God to hold the September 11th prayer vigil on the Western Front Lawn,' and that '[t]his was Rev. Mahoney's honest conviction,'" concluded that the plaintiff "[had] not alleged that his sincerely held religious belief required him to conduct his September 11 vigil with more than 19 people." *Id.* at 18 (citation omitted). The court noted that it did not question the sincerity of the plaintiff's belief, but stated that "[i]ts mere 'existence,' . . . and 'even the sincere desire to act in accordance with it,' is 'not enough to sustain a claim.'" *Id.* (quoting *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth. ("Archdiocese of Washington I")*, 281 F. Supp. 3d 88, 114 (D.D.C. 2017), *aff'd*, 897 F.3d at 335).

Likewise, here, the Court does not question that Plaintiff feels called to prophesy and play music at the Lincoln Memorial. But the fact that the activity would be religiously motivated does not suffice to establish the substantial burden necessary for a RFRA violation. *See Archdiocese of Washington I*, 281 F. Supp. 3d at 114 ("[T]o make religious motivation the critical focus is to read out of RFRA the condition that only substantial burdens on the exercise of religion trigger the compelling interest requirement." (quoting *Doe*, 642 F.3d at 1121)). Plaintiff's Proposed Amended Complaint makes clear that the choice of where to prophesy is his to make because "the servant of God is granted authority to act sovereignly and do whatever *the servant* believes is right according to *the servant's* own free 'will.'" Pl.'s Proposed Am. Compl. at ¶ 113 (citation omitted); *see also, e.g., id.* at ¶ 120 ("Plaintiff is therefore sovereign and granted authority on earth by God to make any sovereign choice that he believes is right.").

Thus, playing at the Lincoln Memorial specifically is not "conduct [that Plaintiff's] religion *requires*," but a choice that Plaintiff feels that his religion empowers him to decide himself. *Doe*, 642 F.3d at 1121 (emphasis added).  To the extent that Plaintiff's religion requires that he prophesy and play music, he can do so elsewhere in Washington, D.C.—such as at the other locations where he has previously demonstrated—and therefore has a "multitude of means" still available to him for acting in accordance with his religious beliefs.  *Doe*, 642 F.3d at 1121 (quoting *Henderson I*, 253 F.3d at 17).

Accordingly, Plaintiff's Proposed Amended Complaint again does not establish the substantial burden required for a RFRA violation.  Having concluded that Defendant did not substantially burden Plaintiff's religious exercise, the Court need not assess whether Defendant's actions impose the least restrictive means of furthering a compelling governmental interest.  For the reasons stated above and in the Court's previous related opinion, the Court denies Plaintiff's request seeking leave to amend his Complaint as futile because the Proposed Amended Complaint would not survive a motion to dismiss.

## V.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Reconsideration or, in the Alternative, for Leave to Amend Complaint.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 6, 2023                                              RUDOLPH CONTRERAS
                                                                                    United States District Judge